IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RAYMOND STEIGELMAN,

    Plaintiff,

vs.

LEVI MCDANIEL, *et al.*,

    Defendants.

No. 13-CV-01076-MV-KBM

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Judgment on the Pleadings Regarding Plaintiff's "Official Capacity" Claims and Request for Declaratory Judgment [Doc. 28] and Defendants' Motion for Summary Judgment [Doc. 29]. Instead of responding to Defendants' Motion for Judgment on the Pleadings, Plaintiff Steigelman stipulated to the dismissal of his "Municipal/*Monell* Liability Claim, Declaratory Judgment and Count III - Malicious Prosecution Claims." Doc. 33 at 1. Consequently, the Court will deem Defendants' Motion for Judgment on the Pleadings [Doc. 28] **MOOT** and will address Defendants' Motion for Summary Judgment as it pertains to the two remaining Counts against the individual Defendants in this suit. The Court, having considered the Motion, briefs, attached materials, relevant law, and being otherwise fully-informed, finds that the Motion is well-taken and will be **GRANTED.**

### BACKGROUND

The facts material to the resolution of Defendants' Motion for Summary Judgment are easily described. Before doing so, however, the Court recognizes that Defendants object to

1

Plaintiff's "sham" affidavit, but believes that accepting the affidavit will not alter the Court's determination and therefore, in the interest of resolving this matter definitively with the most capacious set of evidence possible, will not disregard Steigelman's affidavit. *See* Doc. 36 at 1-6.

On "February 26, 2011, the date of the incidents underlying the claims made in his Amended Complaint, Raymond Steigelman "was on probation." Defendants' Statement of Undisputed Material Facts ("DSUMF") ¶ 3. On the date in question, Steigelman "was aware that one of the conditions of his probation was that he was not to be in possession of any alcoholic substance and that he was not to be in a location that sells alcohol." *Id.* ¶ 5. Even so, on February 26, 2011, Plaintiff visited "the Wooden Nickel Package & Bar in Bloomfield," New Mexico. *Id* ¶ 6.

Evidently, an "employee of the Wooden Nickel told plaintiff that he could not be in the bar -- plaintiff claims that this person yelled at him, and admits that he [Steigelman] yelled back." DSUMF ¶ 11. Plaintiff refused to leave the bar, even though "[o]ne or more employees of the Wooden Nickel asked plaintiff to leave." *Id.* ¶ 12. Evidently, Plaintiff believes that he "was asked to leave because he was told that no dogs were allowed and he explained that Spank is his service animal and they still insisted that Plaintiff leave" *id.* but, confusingly, Plaintiff does not dispute that bar personnel "called the police because of plaintiff's behavior, not because plaintiff had his service dog with him at the Wooden Nickel." Doc. 35 at 4-5. In a peculiar twist, however, Plaintiff also "called 911 requesting a police officer be sent to Wooden Nickel because he was told he could not be in the Wooden Nickel with Spank [his service animal]." *Id.* at 5.

Whatever the underlying rationale, it appears certain that an employee of the Wooden Nickel "called the Bloomfield Police Department to report that [P]laintiff was acting

belligerently toward other customers and that he would not leave the premises." DSUMF ¶ 13. In response to these calls, three officers arrived at the bar; "[t]hose officers were Levi McDaniel, Justin Darby and Sergeant Robert Barker." *Id*. ¶ 16. Apparently, as part of the call to the scene, "Officer McDaniel had been informed by dispatch" that Steigelman was on probation and that the terms of Plaintiff's probation forbade his presence in an establishment that sold alcohol. *Id.* ¶ 18. At this point, an officer asked that Steigelman leave the bar, though Plaintiff claims that he "got overwhelmed and confused and because of his [traumatic brain injury], He [sic] was unable to think fast enough to process what was happening." Doc. 35 at 6. During this exchange, "Officer Justin Darby lawfully requested that [Steigelman] step outside of the Wooden Nickel to talk to Darby" and the Plaintiff complied. DSUMF ¶ 20.

Once outside, Officers Darby and McDaniel "informed plaintiff that he was not supposed to be in the bar." *Id.* ¶ 22. Plaintiff admits that he was aware that he had violated his probation. *Id.* ¶ 21. The conversation quickly devolved into shouting between the Officers and Plaintiff. *Id.* ¶ 23. Tensions eventually subsided and the "Officers repeatedly asked plaintiff to simply leave voluntarily." *Id.* ¶ 24. Despite the de-escalation, however, Plaintiff states that he "was totally overwhelmed and frustrated by being yelled at previously" yet for some reason, "Plaintiff told the Officers to arrest him." Doc. 35 at 8. Officer Levi McDaniel obliged him. DSUMF ¶¶ 26-27. As he was handcuffed, Steigelman "tightened up his left arm" and "was taken to the ground" although he was lifted to his feet after he had been secured. *Id.* ¶¶ 28-29. During this time, Steigelman's "head struck a police car while he was being arrested" and he "claims that he was thrown up against a wall" in the course of the arrest. *Id.* ¶¶ 32-33.

Approximately six months after his arrest, Plaintiff had surgery to ameliorate a condition that caused him difficulty in breathing through his nose; Plaintiff admits that he has no basis to

believe that this medical issue was caused or exacerbated by his encounter with the police. Doc. 35 at 11-12. "Similarly, plaintiff's dosage of Dilantin (epilepsy medication) was increased after the arrest—however, no one has told him that this increase came about as a result of the arrest incident." DSUMF ¶ 35. On February 26, 2013, Plaintiff filed suit in New Mexico state court; Defendants timely removed the action to this Court. *See generally* Doc. 1. The Individual Defendants remaining in this case now move for summary judgment on the basis of qualified immunity.

## DISCUSSION

### I. Summary Judgment in Qualified Immunity Cases

The well-trod standard on a motion for summary judgment shifts significantly where, as here, the defendants invoke the protection of qualified immunity. *See Scull v. New Mexico*, 236 F.3d 588, 595 (10th Cir. 2000). In such instances, the plaintiff bears the "heavy two-part burden" of establishing that "the defendant's actions violated a [federal] constitutional or statutory right" and that the right in question "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotation marks omitted). Of course, it is now settled law that the Court may elect "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If the plaintiff meets its burden under this framework, the Court then proceeds with its ordinary summary judgment analysis and the burden reverts to the defendant to demonstrate that no genuine issue of material fact exists that would defeat its claim for qualified immunity. *See, e.g.*, *Woodward v. City of Worland*, 977 F.2d 1392, 1396-97 (10th Cir. 1992) (citations omitted), *cert. denied*, 509 U.S. 923 (1993). Here, Plaintiff has failed to demonstrate that Defendants' conduct

violated any right secured by federal law, such that the Court need not reach traditional summary judgment analysis.

## II. Wrongful Arrest

Plaintiff's Section 1983 claim for wrongful arrest must fail. While Plaintiff focuses his entire argument on the procedural requirements for an arrest predicated on a probation violation, he ignores entirely the fact that the officers had probable cause to arrest him for disorderly conduct in violation of N.M.S.A. 78 § 30-20-1 and Bloomfield Municipal Ordinance Sec. 11-78. That is, Plaintiff appears to assume, contrary to well-established authority, that the sole offense upon which Defendants may seek to ground a claim of qualified immunity is the offense for which the officers stated that they arrested the Plaintiff. *See* Doc. 35 at 14. This argument profoundly misapprehends the applicable law. *See, e.g.*, *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (explaining that an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."); *Apodaca v. City of Albuquerque*, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that would provide probable cause to arrest her on *some* ground.) (emphasis original); *United States v. Turner*, 553 F.3d 1337, 1345 (10th Cir. 2009) ("the probable cause inquiry is not restricted to a particular offense, but rather requires merely that the officer had reason to believe that a crime—any crime—occurred."). Thus, the arrest was lawful if the facts available to the officers furnished probable cause to believe that Steigelman had committed *any crime* for which he could be arrested.

This conforms with the consistent explanation offered by the Supreme Court regarding its probable cause jurisprudence, which holds that "when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public

5

interests is not in doubt. The arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008). So it is here. Steigelman's plainly obstreperous and contumacious behavior throughout the ordeal furnished probable cause to arrest Plaintiff for "disorderly conduct," which, in New Mexico, merely requires that the suspect "engag[e] in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace." N.M.S.A. 1978, § 30-20-1.

Further, the officers are immunized from any suit arising from an allegedly unlawful arrest if there was "arguable probable cause" to arrest the plaintiff. *See, e.g.*, *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) ("In the context of a qualified immunity defense on an unlawful search or arrest claim, we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct.") (internal quotation marks omitted). There can be no doubt that under this framework, Defendants lawfully arrested Steigelman. For this reason alone, Plaintiff's claim predicated on the purportedly unlawful arrest is defeated by qualified immunity and Defendants are entitled to judgment as a matter of law.

### III. Excessive Force

Plaintiff has failed to meet his "heavy two-part burden" of establishing that "the [defendants'] actions violated a [federal] constitutional or statutory right" and that the right in question "was clearly established at the time of the [defendants'] unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotation marks omitted). Plaintiff's sole argument with respect to his excessive force claim is that "the officers had no justification in using any force to effectuate the arrest. The arrest was unconstitutional and any force used in effectuating the same was unreasonable per se." Doc. 35 at 17. This contention is fatally

undermined by its faulty premise. The Court held above that Steigelman's arrest was lawful, such that some reasonable degree of force commensurate with the circumstances is justified. Plaintiff has presented no alternative argument with respect to this claim and therefore cannot meet his burden of establishing that any federal right was violated. Consequently, the Defendants are entitled to judgment as a matter of law as to this Count.

### IV. Punitive Damages

Plaintiff's "claim" for punitive damages will be dismissed *sua sponte*. Punitive damages, as their name indicates, are a form of relief, not an independent cause of action. *See, e.g.*, *Mason v. Texaco, Inc.*, 948 F.2d 1546, 1554 (10th Cir. 1991) ("A punitive damage claim is not an independent cause of action or issue separate from the balance of a plaintiff's case. It is part and parcel of a liability determination."); *Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622 (10th Cir. 1992) ("A request for damages, however, does not constitute a cause of action; rather damages are a remedy for a legal wrong."). As the Court has granted summary judgment in favor of the Defendants as to every other cause of action alleged by Plaintiff, there is no possible basis on which to award punitive damages, such that the Court is compelled to dismiss this Count.

### CONCLUSION

Plaintiff has no remaining claims in this case. He stipulated to the dismissal of Count III of his Amended Complaint, the Court has now granted judgment as a matter of law with respect to Counts I & II, and explained, *sua sponte*, why Count IV of the indictment cannot form the basis of an independent cause of action. As there is no longer any theory on which Plaintiff can seek prevail, the Court will grant summary judgment in favor of the Defendants.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment [Doc. 29] is **GRANTED.**

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE

**Mark D. Standridge**  
Jarmie & Associates  
Las Cruces, N.M. 88004  
*Attorney for the Defendants*

**Santiago E. Juarez**  
Law Office of Santiago E. Juarez  
Albuquerque, NM 87104  
*Attorney for the Plaintiff*